IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **FRANCES RODRIGUEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-175-BP** |
| | § | |
| **COMMISSIONER OF** | § | |
| **SOCIAL SECURITY,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Frances Rodriguez ("Rodriguez") applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplement Security Income ("SSI") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding that she was not disabled. Rodriguez appealed. At issue is whether substantial evidence supports the decision of the Administrative Law Judge ("ALJ") that Rodriguez is capable of performing work activities on a regular and continuing basis that involve frequent visual acuity. Finding that substantial evidence supports the decision, the Court **AFFIRMS** the Commissioner's denial of Rodriguez's application.

I.      BACKGROUND

Rodriguez first applied for DIB and SSI on March 27, 2019, alleging disability due to the combined effects of blepharospasm, vertobasilar artery syndrome, depression, bipolar syndrome, and related disorders. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 10-1 at 85, 138, 140. The Commissioner denied her application initially and upon reconsideration. *Id.* at 85-86, 107-08. Rodriguez challenged the Commissioner's denial in a hearing before an ALJ, who affirmed the Commissioner's decision. *Id*. at 41-43, 49-63, and 144. Rodriguez appealed the decision to the

Social Security Appeals Council ("AC"), which vacated the ALJ's decision and remanded the case for new proceedings. Tr. 149.

An ALJ reheard Rodriguez's case on October 5, 2021 and found that Rodriguez was not disabled. Tr. 28, 64. The AC denied further administrative review. *Id.* at 1. "[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Thereafter, Rodriguez filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1.

## II.     STANDARD OF REVIEW

Titles II and XVI of the SSA govern the DIB and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434, 1381-1383f. Claimants seeking benefits under either program must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI]"). A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the

2

claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis*, 837 F.2d at 1382. "Substantial evidence

is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III.   ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 15-29. First, the ALJ found that Rodriguez had not engaged in substantial gainful activity since January 23, 2019. Tr. 18. Second, he found three medically severe impairments: presbyopia, depression, and anxiety. Tr. 21. The ALJ also found five nonsevere medical impairments, including blepharospasm. *Id*. Third, he identified no impairment or combination of impairments that qualified under the federal regulatory list. *Id*. The ALJ then assessed Rodriguez's RFC:

> After careful consideration of the entire record, I find that the claimant had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: visual acuity is limited to frequent; never climb ladders, ropes or scaffolds; and no exposure to unguarded heights, moving mechanical parts, or other unguarded hazards. In addition, the claimant is able to perform simple, routine tasks; perform simple work-related decisions; occasionally interact with supervisors, coworkers, and the public; and make simple work-related decisions.

Tr. 23 Using this RFC and relying on testimony from a vocational expert ("VE"), the ALJ determined at step four that Rodriguez could perform PRW, specifically as a hand packager, production assembler, and price marker. Tr. 28. The step-four finding meant that Rodriguez was ineligible for DIB or SSI because she was not disabled. *Id.*; *see Lovelace*, 813 F.2d at 58. After concluding that Rodriguez's age, education, work experience, and RFC with additional limitations still allowed her to perform the requirements of other jobs, the ALJ then found Rodriguez "not disabled" under §§ 216(i) and 223(d) of the SSA. Tr. 28.

Rodriguez argues three grounds for reversal. First, she asserts that the ALJ mischaracterized her condition as presbyopia rather than blepharospasm in Step Two, stating that the medical evidence of record clearly established that Rodriguez's affliction was bilateral blepharospasm, and the mischaracterization resulted in a biased RFC finding. *Id.* at 13-14, 17. Second, she contends that the RFC assessment did not account for her visual limitations on a regular and continuing basis. *Id.* at 17. Finally, she argues that there is no medical basis for the ALJ's finding on the extent of her limitation in visual acuity resulting from bilateral blepharospasm. *Id.* at 19.

### A.  Any potential error from mischaracterizing Rodriguez's blepharospasm as presbyopia is harmless.

Rodriguez contends that the ALJ mischaracterized Rodriguez's "well-documented visual impairment of bilateral blepharospasm" as presbyopia. ECF No. 16 at 13-14.  At Step Two, the ALJ noted that Rodriguez had severe presbyopia and non-severe blepharospasm. Tr. 18, 21. However, Rodriguez claims that she was not treated for presbyopia, but for blepharospasm, and, therefore, the ALJ's analysis of the effects of her visual condition on her ability to work arose from "a basic mischaracterization and misreading of Rodriguez's actual visual impairment." ECF No.

16 at 16. Accordingly, she argues that an evaluation of presbyopia, instead of blepharospasm, is not based upon "all relevant evidence."

Regardless of the possible mischaracterization of Rodriguez's medical conditions, the ALJ was required to assess any limitations stemming from blepharospasm and rely on medical evidence in the record to determine any limitations. *Cotter v. Comm'r*, *Soc. Sec. Admin.*, No. 4:21-cv-748-P, 2022 WL 3970057, at *5 (N.D. Tex. Aug. 10, 2022), *rec. adopted*, 2022 WL 3974493 (N.D. Tex. Aug. 31, 2022), *aff'd sub nom. Cotter v. Kijakazi*, No. 22-10953, 2023 WL 2759064 (5th Cir. Apr. 3, 2023) ("[a] Social Security regulation requires the ALJ to consider the restrictions and limitations caused by all of [the claimant's] impairments, even those that are non-severe"). The ALJ assessed Rodriguez's blepharospasm limitations when formulating his decision, cited medical records discussing Rodriguez's blepharospasm, noted her testimony that she had blepharospasm and detailed her functional limitations, and discussed Dr. Murphy's opinion, which included findings on her blepharospasm. Tr. 24-25. Thus, any error that may have occurred by "mischaracterizing" her condition as severe presbyopia and non-severe blepharospasm is harmless as the ALJ properly considered all of Rodriguez's limitations when determining her final RFC.

**B.     The ALJ was not required to make a specific finding regarding Rodriguez's ability to work on a regular and continuous basis.**

Rodriguez asserts that the ALJ failed to cite medical evidence of record that clearly established that she could perform work activities requiring frequent visual acuity continuously and regularly, even during periods when the effects of her Botox of treatments for blepharospasm had worn off. ECF No. 16 at 18. Thus, she argues that the ALJ erred by not making a specific finding regarding her ability to work on a regular and continuous basis given her condition. *Id*.

Rodriguez's argument is not availing because the Fifth Circuit has specifically rejected the contention that an ALJ must in every decision articulate a separate and explicit finding that a

claimant can maintain a job on a sustained basis. *Castillo v. Barnhart*, 151 F. App'x 334, 335-36 (5th Cir. 2005). The claimant's ability to work on a sustained basis is inherent in the definition of RFC. *Dunbar v. Barnhart*, 330 F.3d 670, 671-672 (5th Cir. 2003); Social Security Ruling 96-8p, 1996 WL 374184, at *1-2 (July 2, 1996) ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."). However, an ALJ may need to make a specific finding regarding a claimant's ability to maintain work where "by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).

Although Rodriguez's blepharospasm symptoms get worse after the Botox injection treatments that she receives wear off, her condition does not meet the *Frank* definition of "waxing and waning." *See Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005). In *Perez*, the claimant received epidural injections to combat knee pain, but "[b]ecause the injections [were] given over time, the pain would vary in intensity or 'wax and wane' between injections." *Id*. at 465. In rejecting this argument, the court held that "[s]uch an assertion is simply not sufficient to bring [the claimant's] case within the realm of disablement envisioned by the *Frank* court [because] the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain." *Id*.

The *Perez* example is instructive here. Rodriguez receives Botox injections to mitigate the symptoms caused by the blepharospasm. Tr. 560; ECF No. 16 at 16. Her symptoms worsen as time after an injection passes, but as in *Perez*, the symptoms vary in intensity between injections that treat those symptoms. Moreover, Rodriguez has not pleaded or provided evidence that anything but the timing of her injections causes the cyclical nature of her symptoms. This distinguishes her case from others that involved a condition that waxed and waned. *See Drake v. Colvin*, No. 3:15-

cv-2597-G-BK, 2016 WL 5793208, at *6 (N.D. Tex. Sept. 6, 2016), *rec. adopted*, 2016 WL 5661665 (N.D. Tex. Sept. 28, 2016) (holding that plaintiff's rheumatoid arthritis had episodic features, such as flare-ups, and waxed and waned over time, requiring a specific finding); *Bates v. Colvin*, No. 3:13-cv-1659-L, 2014 WL 408052, at *8 (N.D. Tex. Jan. 31, 2014) (same for cyclic vomiting syndrome)*; McGhee v. Astrue*, No. 3:10-cv-424-BH, 2010 WL 2941204, at *8 (N.D. Tex. July 21, 2010) (same for dry eyes). The fact that the effect of Rodriguez's Botox treatment lessened over time did not require the ALJ to make a specific finding in the RFC regarding her ability to sustain work on a regular and continuous basis.

> **C.      The ALJ included additional physical limitations in the RFC in concluding that Rodriguez was not disabled, but this did not constitute reversible error.**

Substantial evidence supports the ALJ's RFC that limited Rodriguez's visual acuity to frequent. Tr. 23; *Ripley*, 67 F.3d 552. A limitation of "frequent visual acuity" is a term of art used in the Dictionary of Occupational Titles to distinguish between vision requirements for different jobs and relates to both near and far visual acuity. *See e.g.* §§ 920.587-018 Packager, Hand; 706.687-010 Assembler, Production; and 209.587-034 Marker. A limitation of "frequent" means that a claimant has acuity one-third to two-thirds of the time. *Id*.

Substantial evidence did not support the ALJ's RFC determination in *Ripley*, thus warranting remand, because the record "d[id] not clearly establish…the effect [the claimant's] condition had on his ability to work." *Id.* at 557. The ALJ found Ripley not disabled because he could perform sedentary work. *Id.* Even though the record included "a vast amount of medical evidence," including "reports discussing the extent of Ripley's injuries," no reports from "qualified medical experts" showed how Ripley's condition affected his ability to perform sedentary work. *Id.* at 557 & n.27.

After *Ripley*, several Courts recognized its proposition that reversible error lies where the "record does not clearly establish" how an applicant's condition affects his ability to work. *Thornhill v. Colvin*, No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014), *rec. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015); *Fitzpatrick v. Colvin*, No. 3:15-cv-3202-D, 2016 WL 1258477, at *7-8 (N.D. Tex. Mar. 31, 2016); *Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at *3 (N.D. Tex. Oct. 19, 2021), *rec. adopted*, 2022 WL 768546 (N.D. Tex. Mar. 14, 2022). However, in those cases, the ALJ completely rejected the only medical evidence that supported his or her determination.

Rodriguez relies on this line of cases to argue that substantial evidence does not support the ALJ's limitation on her visual acuity. ECF No. 16 at 19, 18 at 2. She argues that the ALJ departed from the opinion of State Agency Medical Consultant ("SAMC") Charles M. Murphy, M.D. and determined that Rodriguez's impairments required more limitations. *Id*. She states that Dr. Murphy, who examined her on reconsideration, concluded that she had no limitations on near and far acuity. *Id*; Tr. 117, 130. The ALJ found this opinion partially persuasive because Dr. Murphy was aware of the social security guidelines. Tr. 25. However, the ALJ determined that other evidence offered at the administrative hearing supported a finding of greater limitations due to Rodriguez's psychological impairments. Tr. 25. Rodriguez asserts that no medical evidence supports the visual acuity limitation, and that reversal must follow. ECF No. 16 at 19, 18 at 2.

Rodriguez's case is distinguishable from the cases noted above where the Court reversed the ALJ's decision. In those post-*Ripley* cases, the Court found the ALJs' RFC determinations, as a whole, "were not supported by substantial evidence when the ALJ rejected all medical opinions of record and independently determined [ ] the plaintiff[s'] [limitations]." *Ernest A. J. v. Saul*, No. 1:18-cv-00194-BU, 2020 WL 6877706, at *17 (N.D. Tex. Oct. 19, 2020), *rec. adopted*, 2020 WL

6873609 (N.D. Tex. Nov. 23, 2020). Here, the ALJ did not completely reject Dr. Murphy's opinion, but instead found it "partially persuasive" given the other evidence of record. Tr. 25. "Assigning less persuasive merit to particular areas of a specific evidentiary source is a far cry from rejecting that source in its entirety." *Vasquez v. Comm'r of Soc. Sec.*, No. 7:21-cv-00028-O-BP, 2022 WL 2975471, at *5 (N.D. Tex. June 30, 2022), *rec. adopted*, 2022 WL 2972240 (N.D. Tex. July 26, 2022). *See also Ernest A. J.*, 2020 WL 6877706 at *17 ("[t]he ALJ, in concluding that Plaintiff can perform simple, routine work involving simple work-related decisions, departed from the SAMCs' medical opinions insofar as the ALJ found Plaintiff to be more limited than the SAMCs opined. However, this departure does not constitute a rejection of those opinions, as Plaintiff suggests."); *Michael L. v. Berryhill*, No. 3:18-cv-0010-G-BK, 2019 WL 1243866, at *5 (N.D. Tex. Feb. 20, 2019), *rec. adopted sub nom. Layton v. Berryhill*, 2019 WL 1244076 (N.D. Tex. Mar. 18, 2019) ("the ALJ did not reject the assessments of the SAMCs by including additional restrictions in her RFC assessment").

ALJs may assign more or less persuasive value to certain evidentiary sources and reach an RFC based on some, but not all, of the evidentiary record. *Vasquez*, 2022 WL 2975471 at *5. Thus, even though the ALJ found Dr. Murphy's opinion only "partially persuasive," the ALJ's decision is not devoid of any medical opinions. The ALJ did not wholly reject the SAMC's assessments, and he explained the reasoning for his decision. Accordingly, the ALJ properly evaluated the medical opinion evidence of record and did not commit a *Ripley* error.

Even if the ALJ erred, inclusion of limitations on a claimant's activity beyond those expressed by a medical source or SAMC does not automatically constitute reversible error. *Ernest A. J.*, 2020 WL 6877706 at *13. The Court will not reverse the Commissioner's decision where "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364

(5th Cir. 1988). Rodriguez does not show how inclusion of restrictions that would qualify her for less work than the SAMC recommended affected a substantial right.  *See Steven K. v. Kijakazi*, No. 3:20-cv-01655-G-BT, 2022 WL 1056920, at *13 (N.D. Tex. Jan. 19, 2022). Likewise, the Court finds that an ALJ's formulation of an RFC that makes it less likely for a claimant to perform PRW, thus giving her a greater chance of being found disabled, does not affect a claimant's substantial rights.

Moreover, Rodriguez cannot demonstrate prejudice because she has not pointed to any evidence that she could or would have produced that might have changed the ALJ's decision. *See Michael L*, 2019 WL 1243866 at *5. Substantial evidence in the record supports the ALJ's RFC determination. *See id.* (holding that the claimant cannot demonstrate prejudice because substantial evidence supports the ALJ's decision); *see also Steven K.*, 2022 WL 1056920 at *12. The record reflects that the ALJ considered the entire evidentiary record and incorporated into his decision treatment notes and observations of several doctors and psychologists, testimony and hearing evidence regarding Rodriguez's functional impairments, her description of what she could and could not do, and the SAMCs' functional estimates to the extent that they supplemented and were consistent with the rest of the record. *See* Tr. 18-21, 24-25. Because those considerations are "such relevant evidence as a reasonable mind might accept to support a conclusion," substantial evidence supports the RFC. *See Ripley*, 67 F.3d at 555 (quoting *Greenspan*, 38 F.3d at 236).

While Rodriguez disagrees with the RFC assessment, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417). That is not the case here, and the Court is "highly deferential" to the Commissioner. *Perez*, 415 F.3d at 464. Thus, any error on the evidence before the ALJ is not a reversible error.

**IV.     CONCLUSION**

Because the ALJ employed proper legal standards and substantial evidence in the record supports the ALJ's limitations on the claimant's visual acuity, the Court **AFFIRMS** the Commissioner's decision.

It is so **ORDERED** on June 27, 2023.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

12